**SCOTTISH SHIRE LINE, Limited v. UNITED STATES.**

**UNITED STATES v. THE LANARK-SHIRE et al.**

**THE HOBBY.**

Nos. 9984, 9985.

United States Court of Appeals Third Circuit.

Argued Jan. 6, 1950.

Decided June 6, 1950.

------

Alfred T. Cluff, Sp. Asst. to Atty. General (H. G. Morison, Asst. Atty. Gen., Alfred E. Modarelli, U. S. Atty., Dist. of New Jersey, Newark, N. J., on the brief), for appellant.

George Whitefield Betts, Jr., New York City (Hunt, Hill & Betts, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

We are here presented with a maritime collision, and, as is not unusual in such cases, the problem may be stated briefly in the question, where did the accident occur? The answer holds the key to the ultimate issue of liability.

Two vessels are involved: the "Lanarkshire" and the "Hobby". The former is a large freighter of the shelter deck type, about 506 feet long, light at the time of the collision and drawing 22 feet aft and 12 feet forward; her master, Captain Charles E. O'Byrne, had had forty years of sea experience, twenty in command. The latter is a United States Navy destroyer of the 1620-ton type, approximately 348 feet long, with maximum draft of 14 feet; her commanding officer, Lt. Commander Ernest Blake, had had at least 14 years of sea experience, but the "Hobby" was his first command, commencing November, 1942.

The instant libel was brought by the Scottish Shire Line, Ltd., a British business organization, owner of the "Lanarkshire," against the United States pursuant to the Public Vessels Act, 46 U.S.C.A. § 781; a cross libel was filed by the United States. No testimony was heard by the court below; instead, the submission was on depositions. In due course, the learned trial judge determined that the "Hobby" was alone at fault, granted an interlocutory decree in favor of the libelant, and dismissed the cross libel. The United States has appealed, asserting that the "Lanarkshire" was either solely or contributorily at fault.

The collision occurred on February 15, 1943, at about 1:10 or 1:12 a. m. There was a bright moon; visibility was good; the wind was strong from the northwest with hard gusts; and the tide was ebbing. The general vicinity of the collision was the main ship channel in the Upper Bay area of New York Harbor between Governor's Island and Bedloe's Island (the Statue of Liberty). The easterly boundary of the channel is the westerly side of Governor's Island, on the north and south (westerly) ends of which are fixed red lights. The westerly boundary of the channel is the easterly boundary of an anchorage area. The anchorage area just east of the Statue of Liberty is the "Collier" anchorage, and that to the southwest, just below the "Collier", is the "Liberty". The easterly boundary of these anchorages is determined by lining up green flashing buoys No. 29 and No. 31. Both buoys are southerly of the Statue of Liberty, at the north and south (easterly) corners of the "Liberty" anchorage, and No. 31 is the closer of the two. Thus, a vessel standing down the channel would have Governor's Island to the port and the anchorage to the starboard, with the Statue of Liberty further starboard beyond the "Collier" anchorage. About abreast of the red light on the southwesterly end of Governor's Island, the navigable channel is approximately 850 yards wide.

With these facts, we come to the crux of the controversy. It is the contention of the "Lanarkshire" that on February 13, 1943, at about 7:30 p. m. she anchored in the "Collier" anchorage and did not thereafter drag her anchor or shift her position (ex-

cept, of course, as she swung to her anchor with the wind and tide) until she was struck by the "Hobby" on February 15, 1943, at about 1:10 or 1:12 a. m. The United States does not dispute the original anchored position of the "Lanarkshire", but nevertheless contends that at the time of the collision she was about athwart the middle of the channel approximately abreast of the south light on Governor's Island, in violation of 33 U.S.C.A. § 409.

The learned trial judge determined as fact that the "Lanarkshire" remained within the anchorage area until the collision, but that even if the "Lanarkshire" were in the channel sufficient navigable water remained between her and Governor's Island to permit the Hobby to pass. These findings are necessarily contested by the United States on these appeals, and in so doing it reminds us that it is entitled to have a review de novo [1] especially since no witness was heard by the court of first instance.

The collision may be described in terms of the "Hobby's" conduct and without reference to the position of the "Lanarkshire,"since the latter was concededly at anchor. According to the deposition of the captain of the "Hobby", when the "Hobby" was more than two ship lengths from the "Lanarkshire" he ordered the rudder 30° right, his intention then being to leave that vessel and those to the west of her on the "Hobby's" port, travelling close to Bedloe's Island. However, because of the force of the northwesterly wind, the "Hobby" did not respond, but made leeway toward the "Lanarkshire." Maneuvering with the "Hobby's" engines could not prevent her port quarter from drifting onto the "Lanarkshire's" stem. Then, because the "Hobby" was headed for a third vessel lying at anchor somewhat westward of the "Lanarkshire", full reverse was ordered, and the "Hobby" came astern to contact the port side of the "Lanarkshire" forward of her bridge. At the time of the collision, the "Hobby" was on a course of 258° True.

The evidence on behalf of the "Lanarkshire" is clear and positive that she did not substantially alter her position from the time of first anchoring to the time of collision. If this were so, it would be the end of the matter. But the United States has endeavored to establish the contrary in three ways. First, the men of the "Hobby" have given depositions to the effect that the "Lanarkshire" was athwart the channel riding to a taut anchor chain; second, it is suggested that under the wind and tide conditions preceding the collision, the "Lanarkshire" probably dragged her anchor, and had she done so she would have been in the position asserted by the witnesses from the "Hobby"; and third, the United States has adduced a Coast Guard report that the "Lanarkshire" was in the channel on the morning of February 14th. Nevertheless on the record, we agree with the ultimate conclusion reached by the District Court.

We think it pertinent to note at the outset that while the captain and navigator of the "Hobby" were men of long seamanship, yet they were faced with the difficulty of navigating the New York Harbor without a pilot and without any appreciable experience there. They had plotted a course of 260° True between the Battery and Governor's Island, intending to alter that to 206° True westerly of the light on the north end of Governor's Island. The course was a sound one, and with variations made necessary by traffic the "Hobby" substantiated it up to the point where she was to alter her course to 206° True. At about 1:05 a. m., the "Hobby" was on a course of 258° or 260° True at 10 knots, somewhat east of her plotted course, perhaps only about 300 yards from the shoal water of Governor's Island. Since her captain testified that when he first sighted the "Lanarkshire" she was about 1,000 yards off, it was about this time, too, that he caught sight of the "Lanarkshire's" lights. The "Hobby's" speed was reduced to 5 knots and she continued on a course of 258° True. It was about then, or a minute or two later that the captain was advised by his naviga-

---

1. Crist v. United States War Shipping Administration, 3 Cir., 1947, 163 F.2d 145, 146 certiorari denied 332 U.S. 852, 68 S.Ct. 352, 92 L.Ed. 422.

tor that it was time to alter the course to 206° True. This he did not do. Rather, he determined that the "Lanarkshire" was in the channel and that she was approximately 200 yards from a third vessel anchored westward of her. The third vessel, it is conceded, was within the anchorage or at least on the easterly boundary of it. The conclusion that the "Lanarkshire" was in the channel was based on a picture of the channel which the captain had in mind as a result of his examination of the charts prior to leaving the Navy Yard a short while earlier, and upon the observation that she seemed to be just about where he wanted to go. The charts were not with the captain, but with the navigator. Also, it was within a minute or two after 1:05 a. m. that the navigator, in response to the captain's query, advised that there was shoal water off Governor's Island, or "not much water" between the "Lanarkshire" and Governor's Island. The navigator, who also sighted the "Lanarkshire" at about a 1,000 yards distance, put her closer to Governor's Island than did his captain; according to him, she was 200 to 300 yards from Governor's Island. Finally, the "Hobby" on the basis of bearings taken after the collision, placed the "Lanarkshire" west of the south light on Governor's Island approximately athwart the middle of the channel, about 400 yards from the anchorage. The "Lanarkshire's" officers placed her several hundred yards north of that position on the basis of bearings taken by them after the collision.

Taking these facts together with the clear evidence that the "Hobby" was on a course of 258° True at the time of the collision we entertain serious doubt that the "Lanarkshire" was in the channel or at least so far within it as to constitute a hazard to navigation. The "Hobby's" course was never altered from 258° True, and until she was "more than" two ship lengths from the "Lanarkshire" her speed continued at 5 knots. Therefore, she was headed not down the channel, but into the anchorage just above the position indicated by the "Lan-

arkshire's" officers as that vessel's original anchorage. We are aware, of course, that the "Hobby" was making leeway, but we have no indication that she was making so much, and so little headway, as to track a course almost 206° True. This she would have had to do if the accident occurred as the United States maintains, for the position assigned to the "Lanarkshire" after the collision, where it is contended she was at the time of the collision, is just *east* of the "Hobby's" plotted course of 206° True. Indeed, the positions marked on the "Hobby's" navigation chart indicate rather clearly that the "Hobby" was destined to reach a point just above the "Lanarkshire's" position according to her officers, unless the "Hobby's" course was altered.[2] It is equally evident that within the four or five minutes after the "Hobby's" navigator advised his captain that it was time to turn, which was not accomplished, the Hobby crossed the plotted course of 206° True making 5 knots and traversed the channel to within more than two ship lengths above the position of the "Lanarkshire" as established by the evidence on behalf of the latter.

Insofar as the probabilities are concerned, it would appear, as the "Lanarkshire's" evidence establishes, more probable that the "Lanarkshire" dragged her anchor after the collision; for the "Hobby" scraped her bilge against the anchor chain and twice contacted the "Lanarkshire," thus aiding the force of the wind on which the "Hobby" relies as being the cause of the "Lanarkshire" dragging her anchor prior to the collision. Again, if, before the collision, the "Lanarkshire" were in the position in which the "Hobby's" men put her after the collision, there would have been much more water between the "Lanarkshire" and the vessel to her westward than the captain of the "Hobby" estimated. Should it be conceded that the "Lanarkshire" was in the channel, on the basis of the Coast Guard report for February 14th as well as upon the statement of the captain of the "Hobby", we should conclude that the "Lanarkshire"

2. When the "Lanarkshire" was sighted, so also was a tug allegedly standing up the channel westward of the "Lanarkshire". In anticipation of a starboard passing, the "Hobby's" rudder was put a little to port, but her course was not substantially altered.

was not so far into the channel that she constituted any greater hazard or impediment to traffic than if the "Hobby" had instead met another vessel standing up the channel for a starboard passing. The doubt that the "Lanarkshire" was so far into the channel before the collision is supported by the probability, and the "Lanarkshire's" evidence, that she moved after the collision, and the evidence submitted by the United States placing her in the middle of the channel after the collision. Moreover, had the "Lanarkshire" been as much as four hundred yards from the vessel to her westward, according to the position given her by the United States after the collision, the space of 1,200 feet would seem to indicate that the "Hobby" would have preferred port rudder, heading leeward, instead of astern to avoid colliding with the vessel westward of the "Lanarkshire" following the first contact.

We do not propose to enter into a discussion of the reasons for the miscalculations of the officers of the "Hobby." But it would appear as a contributing probability that the "Hobby" was navigated without sufficiently accurate present information concerning the channel at the time of the collision. In view of the strong wind, it is understandable that as much room as could possibly be obtained was desirable. The captain of the "Hobby" said he was told by the navigator that there was not much water between the "Lanarkshire" and Governor's Island. The navigator, however, recalled that he advised his captain that there was sufficient *depth* of water between the "Lanarkshire" and the vessel to her westward, and also between Bedloe's Island and the vessels to the eastward; he thought he might have told the captain that there was shoal water off Governor's Island. In this context, it must be again noted that the captain did not have the charts before him, he was navigating at night on the basis of a picture he had in mind, and he must necessarily have guessed at the nearness of the shoals off Governor's Island, the danger of which was magnified by the northwesterly wind. Patently, the brief period he had within which to clarify his position was insufficient to permit him to adjust his estimates. And it is a clear possibility that the tug which was sighted standing up the river westward of the "Lanarkshire" gave the captain of the "Hobby" a false impression of the channel and the "Lanarkshire's" position.

For the reasons stated, the judgment of the court below will be affirmed.